IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

BETTEROADS ASPHALT, LLC

    Debtor

ARTURO FRANCISCO DIAZ IRIZARRY

    Plaintiff

      vs.

JORGE LUIS DIAZ IRIZARRY;
BETTEROADS ASPHALT, LLC

    Defendants

CASE NO. 17-04156 (ESL)

CHAPTER 11

ADV. PROC. NO. 20-00139 (ESL)

OPINION AND ORDER

This adversary proceeding is before the court upon the *Defendant's Motion to Dismiss Complaint and the Memorandum of Law in Support Thereof* (Docket No. 15) filed by defendant Jorge Luis Díaz Irizarry (hereinafter referred to as the "Defendant" or "Jorge Díaz") arguing that the court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because: (i) the Plaintiff fails to state with specificity the particular facts and the claims asserted for this court to find that it has subject matter jurisdiction; (ii) there is no "arising under" jurisdiction to entertain Plaintiff's claims which are based on state corporate law and probate law and not by a statutory provision of Title 11; (iii) there is no jurisdiction "arising in" this bankruptcy proceeding because the Plaintiff's claims stem from the potential legal rights that Plaintiff could have over the Debtor's shares and stocks which are part of the Decedents' estates and are under the control of their Executor in Probate state court; (iv) the claims asserted in the Complaint are not "related to" the underlying bankruptcy case because the outcome of these have no conceivable effect on the bankruptcy estate and/or the administration of the bankruptcy estate; and (v) the probate exception is applicable in the instant case, given that the Plaintiff in the

-1-

Complaint is requesting the Bankruptcy Court to determine the ownership of stocks that form part of two probate estates pertaining to the jurisdiction of the state probate court. In the alternative, the Defendant argues that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) and 19 for failure to join the Probate Executor and the rest of the heirs of the Probate Estates as indispensable parties. (Docket No. 15). On April 21, 2021, the Plaintiff filed his *Opposition to Codefendant's Motion to Dismiss at Dkt. 15 and Memorandum of Law in Support Thereof* (Docket No. 41). Also, before the court is Betteroads Asphalt LLC's *Motion to Dismiss with Prejudice* and the Plaintiff's *Response to Betteroads' Motion to Dismiss and in the Alternative a Finding of Mootness, to Concede Dismissal* (Docket Nos. 60 & 67). For the reasons stated herein, the Defendant's Jorge Diaz's *Motion to Dismiss* is hereby granted.

<u>Relevant Procedural Background</u>

On June 9, 2017, a group of creditors filed two (2) involuntary chapter 11 petitions under 11 U.S.C. §303(a) against Betteroads Asphalt, LLC ("Betteroads" or "Involuntary Debtor") and Betterecycling Corporation ("Betterecycling" or "Involuntary Debtor"). After much litigation, an Opinion and Order was entered on October 10, 2019 adjudicating that the involuntary chapter 11 petitions were not filed in bad faith and the orders for relief under chapter 11 were entered for each of the Involuntary Debtors on October 11, 2019 (Case No. 17-04156, Docket Nos. 520 & 521; Case No. 17-04157, Docket Nos. 362 & 363). On April 12, 2021, Betteroads and Betterecycling's Disclosure Statement and Chapter 11 Plan of Reorganization were filed (Case No. 17-04156, Docket Nos. 1112 & 1113; Case No. 17-04157; Docket Nos. 925 & 926). On April 28, 2021, FirstBank Puerto Rico ("FirstBank"), Santander Financial Services, Inc. ("Santander Financial"), the Economic Development Bank for Puerto Rico ("EDB"), and Banco Popular de Puerto Rico ("Banco Popular" or the "Administrative Agent" and collectively with FirstBank, Santander Financial, EDB, the "Lenders"), Betteroads and Betterecycling, (the "Debtors") and collectively with the Lenders and the Debtors jointly with the Lenders, the "Parties" filed a *Joint Motion for Approval of Settlement and Release Agreement* (Case No. 17-04156, Docket No. 1122; Case No. 17-04157, Docket No. 934). Also, on April 28, 2021, the Parties filed a *Joint Urgent*

*Motion for Entry of Scheduling Order Establishing Shortened Period to Respond and Scheduling Hearings to Consider the Rule 9019 Motions and the Disclosure Statements* (Case No. 17-4156, Docket No. 1123; Case No. 17-04157, Docket No. 935). On April 29, 2021, the Parties filed a *Notice of Filing of Joint Motion for Approval of Settlement and Release Agreement, Deadline to File Responses, and Hearing Date* (Case No. 17-04156, Docket No. 1128; Case No. 17-04157, Docket No. 940). Also, on April 29, 2021, the Parties filed a *Motion Submitting Documents in Connection with the Joint Motion for Approval of Settlement and Release Agreement* (Case No. 17-04156, Docket No. 1129; Case No. 17-04157, Docket No. 941). On May 5, 2021, the *First Amended Disclosure Statement and First Amended Chapter 11 Plan of Reorganization* were filed (Case No. 17-04156, Docket Nos. 1136 & 1137; Case No. 17-04157, Docket Nos. 947 & 948). On May 8, 2021, the Parties filed a *Joint Urgent Motion to Clarify and/or Request Entry of an Order Finding that the Terms of the Scheduling Order Apply to the First Amended Disclosure Statement* and an Amended Order Establishing Response Deadlines and Scheduling Hearings to Consider the Rule 9019 Motion and Disclosure Statements and Granting Related Relief was entered on May 10, 2021 (Case No. 17-04156, Docket Nos. 1138 & 1139; Case No. 17-04157, Docket Nos. 950 & 951). On May 13, 2021, the Parties filed a *Joint Informative Motion to Submit Amended Rule 9019 Proposed Order* (Case No. 17-04156, Docket No. 1141; Case No. 17-04157, Docket No. 953). On May 17, 2021 the Court granted the *Motion under Bankruptcy Rule 9019 for Order Approving Settlement and Release Agreement* (Case No. 17-04156, Docket No. 1142; Case No. 17-04157, Docket No. 954). On May 21, 2021, the Parties filed a *Joint Urgent Motion for Entry of Order (I) Approving First Amended Disclosure Statement, (II) Vacating Hearing on Approval Thereof; (III) Scheduling Hearing on Confirmation of First Amended Chapter 11 Plan for no Later than June 9, 2021, and (IV) Granting Related Relief* (Case No. 17-04156, Docket No. 1147; Case No. 17-04157, Docket No. 959). On May 21, 2021, the Court entered an Order (I) Approving First Amended Joint Disclosure Statements; (II) Scheduling Confirmation Hearing; (III) Scheduling Confirmation Objection Deadline, Voting Deadline, and (IV) Granting Related Relief (Case No. 17-04156, Docket No. 1148; Case No. 17-04157, Docket No. 960). On June 1,

2021, the Parties filed a *Joint Motion to Supplement the Settlement and Release Agreement* (Case No. 17-04156, Docket No. 1159; Case No. 17-04157, Docket No. 969). Also, on June 1, 2021, the Parties filed *an Urgent Joint Motion for Order Granting Joint Motion to Supplement Settlement and Release Agreement, or, alternatively, to Shorten Time for the Filing of Objections in Light of Forthcoming Hearing on Confirmation of Chapter 11 Plans* (Case No. 17-04156, Docket No. 1160; Case No. 17-04157, Docket No. 970). On June 2, 2021, the Court granted the *Joint Motion to Supplement the Settlement and Release Agreement* (Case No. 17-04156, Docket No. 1164; Case No. 17-04157, Docket No. 972). On June 3, 2021, the National Labor Relations Board and the Debtors filed a *Joint Motion for Second Supplement to First Amended Plan of Reorganization dated May 5, 2021* and the same were granted on June 4, 2021 (Case No. 17-04156, Docket Nos. 1165 & 1166; Case No. 17-04157, Docket Nos. 975 & 976). On June 7, 2021, Betteroads and FirstBank filed a *Joint Motion for Approval of Settlement for Treatment under the Plan of Reorganization and Third Supplement to Amended Plan of Reorganization dated May 5, 2021* and the same was granted (Case No. 17-04156, Docket Nos. 1175 & 1176). On June 7, 2021, each Debtor filed its *Statement Pursuant 11 U.S.C. §1129* (Case No. 17-04156, Docket No. 1177; Case No. 17-04157, Docket No. 987).

On June 9, 2021, the confirmation hearing was held in which the court ordered as follows: "[t]here being no objection to the confirmation, and the court after a thorough consideration of the 1129 Statement and all relevant documents, finds and concludes that the Chapter 11 Plan meets the requirements of section 1129. Therefore, an order will be entered confirming the plan, as proposed by the debtor, and made part of the 1129 Statement." (Case No. 17-04156, Docket No. 1179; Case No. 17-04157, Docket No. 988). Also, on June 9, 2021, the Court entered the *Order Confirming the Chapter 11 Plan of Reorganization as Proposed, Amended, and Supplemented by Debtor* for each case respectively. (Case No. 17-04156, Docket No. 1178; Case No. 17-04157, Docket No. 989).

The complaint in the instant adversary proceeding was filed on December 10, 2020 against Defendant Jorge Díaz. The Plaintiff seeks to obtain a declaratory judgment and equitable relief to

enforce shareholder rights in Betteroads and compel Defendant as the controlling shareholder to cease and desist his unilateral corporate governance in violation of state corporation laws, that exclude Plaintiff as a shareholder. The Plaintiff alleges that Defendant has failed to manage and operate the property of the corporation as would a diligent trustee under 28 U.S.C. §959, because he has failed to comply with the requirement of the Law of Corporations of Puerto Rico as it pertains to its governance and respect the rights of shareholders. (Docket No. 1). On January 8, 2021, Defendant Jorge Díaz filed a *Motion Requesting Extension of Time to Answer Complaint or Otherwise Plead* and the same was granted on January 11, 2021 (Docket Nos. 8 & 11). On January 18, 2021, the Plaintiff filed a *Motion for Leave to Amend Complaint as a Matter of Course to Add Debtor as a Party in Interest to the Extent that the Automatic Stay Applies* (Docket No. 11). On February 4, 2021, the Plaintiff filed a *Motion to Withdraw the Motion for Leave to File Amended Complaint, in Addition to Motion Requesting Entry of Order to Modify Stay if Applicable, at Dkt. 11* (Docket No. 12). On February 5, 2021, the Court granted the Plaintiff's motion requesting leave to file an amended complaint and/or entry of order (dkt #12), only as to the request to file an amended complaint. The court stated that the request to lift the automatic stay must be filed as a separate motion in the bankruptcy case (Docket No. 14).

On February 8, 2021, Defendant Jorge Díaz filed a *Motion to Dismiss Complaint and Memorandum of Law in Support Thereof* (Docket No. 15). On February 19, 2021, the Plaintiff filed a *Motion to Deem Moot the Defendant's Motion to Dismiss or in the Alternative to be Held in Abeyance with an Affordment of 14 days for Plaintiff to Respond to any Renewed Dispositive Motions after the Amended Pleadings are Filed* (Docket No. 16). On February 22, 2021, the Court denied the Plaintiff's motion requesting entry of Order as the Plaintiff had not filed the amended complaint as ordered by the court on February 5, 2021 The court noted that a proposed amended complaint was attached to the motion filed by the plaintiff on February 4, 2021 (Docket #12), but the same has not been filed.

The court ordered the Plaintiff to file the same within 14 days (Docket No. 17). On March 10, 2021, the Plaintiff filed the *Amended Complaint* (Docket No. 19).

On March 15, 2021, the Court ordered the Plaintiff to show cause within fourteen (14) days why the complaint should not be dismissed for the reasons stated by the Defendant in the motion to dismiss (Docket #15), which stands unopposed on its merits. (Docket No. 24). On March 26, 2021, the Plaintiff filed a *Motion in Compliance with Order to Show Cause and Request for an Entry of Default and/or in the Alternative for an Extension to Answer Motion to Dismiss on the Merits* (Docket No. 26). On March 30, 2021, Defendant Jorge Díaz filed his *Opposition to "Plaintiff's Motion in Compliance with Order to Show Cause and Request for Entry of Default..."* (Docket No. 27). On March 31, 2021, the Plaintiff filed a *Motion for Leave to File a Reply to Defendant's Jorge Luis Diaz's Opposition to Plaintiff's Motion in Compliance to Show Cause and Request for Entry of Default* and the same was granted on April 5, 2021 (Docket Nos. 28 & 30). On April 6, 2021, the Plaintiff file his *Reply to Codefendant's Jorge Diaz's Opposition to Plaintiff's Motion in Compliance to Show Cause and Request for Entry of Default* (Docket No. 35).

On April 8, 2021, the Court after a thorough analysis ordered as follows:

"[a]fter reviewing the amended complaint filed on March 10, 2021, the court finds that the same adds the debtor as a codefendant, realleges essentially the same facts and arguments in Count I as those in the original complaint and excludes the request in Count 2 of the original complaint. Thus, the grounds and legal argument made by the Defendant to the original complaint as to the lack of subject matter jurisdiction are applicable to the amended complaint.

The court is also concerned with the preclusive effect that a final decision in the state court case may have on the allegations of the amended complaint before this court.

In view of the foregoing, the court grants plaintiff a final opportunity to oppose on the merits the motion to dismiss filed by the Defendant on the grounds of lack of subject matter jurisdiction. The opposition shall be filed within fourteen (14) days. Upon failure to timely oppose the motion to dismiss, an order and judgment dismissing the adversary proceeding will be entered. The dismissal will be without prejudice to the plaintiff pursuing the actions it deems appropriate against the individual codefendant, Jorge L. Diaz-Irizarry, before the courts of Puerto Rico.

The court also orders the plaintiff to inform the court on the status of any state court proceeding between the parties to this action and/or the matters presented in the amended complaint." (Docket No. 37).

-6-

On April 21, 2021, the Plaintiff filed his *Opposition to Codefendant's Motion to Dismiss at Dkt. 15 and Memorandum of Law in Support Thereof* (Docket No. 41).

On May 6, 2021, Betteroads filed a *Motion for Extension of Time to Answer Amended Complaint or File any Proper Motion* and the same was granted on May 7, 2021. (Docket Nos. 47 & 48).

On May 19, 2021, Defendant Jorge Díaz filed his *Reply to Plaintiff's Opposition to Codefendant Jorge Díaz's Motion to Dismiss* reaffirming his position that this adversary proceeding should be dismissed for lack of jurisdiction and that Plaintiff's arguments in opposition are merely general arguments supported on conclusory allegations. Defendant Jorge Díaz further argued that: (i) Plaintiff ignored the Court's Order and concern regarding the preclusive effect of the final judgment entered in civil case No. SJ2015CV00344 and makes no mention as to the resolution of the state injunction case and the relation to the claims asserted in the Amended Complaint; (ii) the state injunction case was resolved by agreement and stipulation of facts between the parties which resulted in a Judgment that to best of our knowledge, is final and unappealable and has *res judicata* and collateral estoppel effects as to the claims in this adversary proceeding; and (iii) Plaintiff speculates that his interference in the bankruptcy proceedings could help in the effectiveness of the plan of reorganization, but fails to provide conclusive facts to support his conclusion. (Docket No. 50). On June 13, 2021, the Plaintiff filed a *Clarifying and Informative Motion* by which he argued: (i) that the instant adversary proceeding could not be precluded by a state court judgment that does not rest on any of the substantive rights asserted in the instant adversary proceeding because the Debtor, who is an indispensable party for the reliefs requested herein, was not a party in the state court case, and the matters litigated there are different to the substantive matters before this court. Therefore, Plaintiff contends

"…that he had no duty to entertain Defendant's unwarranted contention, nor occupy the Court defending an unproven allegation or informing facts about the state court case of 2018 that was closed and immaterial to the instant proceedings;" and (ii) "… there was no duty either to inform this Honorable Court anything particular about the state injunction case civil #SJ2015CV00344 after defendant himself informed that such case was closed since 2018, because Defendant has not provided evidence of his allegations and the merits in that state court case are unrelated to many of the reliefs that are requested in the instant adversary proceeding" (Docket No. 54).

On June 7, 2021, Betteroads filed a *Motion Requesting Final Extension of Time to Answer Amended Complaint or File any Proper Motion* and the same was granted on June 8, 2021. (Docket Nos. 51 & 52). Thereafter, on July 2, 2021, Betteroads filed a *Motion to Dismiss with Prejudice* arguing as follows: (i) Plaintiff did not file its *Amended Complaint*, incorporating the Debtor as a party, until March 10, 2021 after the fixed timeline had elapsed; (ii) Plaintiff's allegations emanate from the assertion that he is an equity holder of the Debtor, and thus, such entitlement prompts additional rights, which are denied. The representation made by Plaintiff to this Court that he was a stockholder, later a membership or equity holder is false due to the following: (a) the Debtor's equity holders passed away; (b) any and all equity of the debtor was transferred or immersed within a community of heirs and/or probate estate; and (c) the plaintiff relationship with the calling to be a potential heir and any interest that could have been derived was subject to an inventory. The equity holders at the filing of the petition were the probate estates of Mr. Arturo Díaz Marquez and Judith Irizarry Morales; (iii) an heir does not have an ownership interest in a particular asset within a probate estate until division and distribution have been performed. If a potential heir accepted under the benefit of inventory, he or she will not be exposed to liability and will only be entitled to distribution when the claims are fully satisfied. The Plaintiff has admitted that he accepted the inheritance under the benefit of inventory, and no division or

distribution has been performed. Therefore, the Plaintiff is not the holder of any equity of the debtor prior to confirmation because the equity of the Debtor is part of the probate estate and no claim of ownership can be asserted by the Plaintiff; (iv) it is the Reorganized Debtor's position that Plaintiff did participate in the case but failed to raise any issue, objection, or claim regarding the administration or the reorganization accepted by creditors and confirmed by the court; (v) on April 28, 2021, the Debtor executed the Settlement and Release Agreement (the "Settlement Agreement") which incorporated the Asset Purchase Agreement ("APA") with Puerto Rico Asphalt, LLC. This Settlement Agreement provided for Plaintiff and his counsels to be notified of the consequences of the approval of the settlement (Case No. 17-04156, Docket Nos. 1122 & 1126). On May 17, 2021, the Court entered the Bankruptcy Rule 9019 Order approving the Settlement Agreement (Case No. 17-04156, Docket No. 1142). The Settlement Agreement and the Bankruptcy Rule 9019 Order, which is the cornerstone of the confirmed Plan, provided a factual and legal adjudication that Mr. Jorge Díaz Irizarry, together with other signatories, were duly authorized to execute this Agreement on behalf of the Party or Additional Releasing Party as to which such Person is a signatory (Case No. 17-04156, Docket Nos. 1122 &1142); (vi) the Settlement Agreement with Lenders recognized and validated all claims and liens in favor of the Lenders. The Lenders and BPPR held an unlimited guarantee against each probate estate and against Plaintiff in a limited capacity (Case No. 17-04156, Docket No. 1122, Exhibit A-1, ¶10 and Exhibit A-2 of Settlement Agreement, ¶6). The Settlement Agreement provided for a release in favor of all members of the probate estate, the dismissal of all complaints and the release of all guarantees upon the compliance of all provisions therein (Case No. 17-04156, Docket No. 1122); (vii) the Amended Disclosure Statement and the Amended Plan were notified to Plaintiff and his counsels (Case No. 17-04156, Docket Nos. 1148 & 1154). No objections were filed by the Plaintiff regarding the disclosures or the plan as to the content or the capacity of the Debtor or

Debtor in Possession to propose the same. On June 9, 2021, during the confirmation hearing, the Court entered the *Order Confirming the Chapter 11 Plan of Reorganization as Proposed, Amended and Supplemented by Debtor* (the "Confirmation Order") (Case No. 17-04156, Docket No. 1178). The Debtor's confirmed plan provides for a discharge of claims pursuant to Article III, Subsection A. (Case No. 17-04156, Docket No. 1137). The Plaintiff nor his counsels appeared at the confirmation hearing; (viii) the confirmation order provides an injunction in favor of the Reorganized Debtor that enjoins parties from continuing claims asserted in purported claims or interest on the Debtor. Moreover, all equity interest on the Debtor which existed upon filing up to the confirmation were extinguished and ceased to exists (Case No. 17-04156, Docket No. 1137, pg. 26, Class 8: Equity Holders' Interest); (ix) there is no remedy that can be effectively granted to the Plaintiff inasmuch all of its purported rights have become moot. Plaintiff is not an equity holder pursuant to the facts of the case and applicable law. Equity interest on the debtor have been cancelled pursuant to the Confirmed Plan and the Confirmation Order. Such Order is final. Therefore, neither as a member of the probate estate nor in his individual capacity, can the Plaintiff be considered an equity holder of the Reorganized Debtor; (x) this Court lacks jurisdiction to entertain Plaintiff's alleged equity holder's rights pursuant to the probate exception; and (xi) the *Amended Complaint* should be dismissed with prejudice pursuant to the *res judicata* and mootness doctrines. (Docket No. 60).

Thereafter, on August 19, 2021, the Plaintiff filed his *Response to Betteroads' Motion to Dismiss and in the Alternative a Finding of Mootness, to Concede Dismissal* by which the Plaintiff contends the following: (i) Plaintiff concedes that the Reorganized Debtor was discharged of all claims, and the treatment of Equity Holder Interest in Class 8 of the Plan was extinguished on the effective date, the reliefs requested in the instant case are not about a discharged claim or to collect a debt from the Debtor. However, the Plaintiff also recognizes that the confirmed plan has yet to

be completed by the Debtor and that his rights remain until the Plan is completed or at least substantially consummated by Debtor; (ii) if the Court concludes *a priori* that the instant cause of action is not moot until consummation of the Plan, the Plaintiff requests that the previous argument be considered by the Court in response to the *Motion to Dismiss*; (iii) if the Court *a priori* finds moot Plaintiff's cause of action based on the treatment of extinction of his equity interest by the confirmed Plan, despite not being completed or substantially consummated, then Plaintiff withdraws the subsequent arguments in response to Debtor's Motion to Dismiss and concedes to the dismissal of the complaint or requests a term to file a voluntary dismissal; (iv) the Court does not need to adjudicate or interpret probate law, but rather taker judicial knowledge of Plaintiff's membership interest inherited in Debtor Company, so that it can grant the relief requested; (v) "[t]here is no controversy that Plaintiff inherited stock shares and has interest ownership in the Debtor Company; and as such, this Court has jurisdiction and can order the person in control of Debtor (codefendant Jorge Díaz) to allow Plaintiff to participate in the bankruptcy's reorganization voting decisions as a member with controlling interest; (vi) the Debtor has not cited any valid authority or source of law to support its contention that Plaintiff cannot claim ownership of the shares in the bankruptcy debtor because his interest units are part of an inheritance subject to liquidation. The case of In re Garcia, 597 B.R. 32 (2014) cited by the Debtor is inapplicable to the the instant case, given that it pertained to a turnover proceeding pursuant to 11 U.S.C. §542(a) in a chapter 7 case of certain proceeds from the sale of real estate that were part of a community in a probate estate. "The instant case is rather different, about moving the court to compel the officer and director in control of the Debtor Company, to allow Plaintiff as an Interest-holding member (who accepted its interest from an inheritance), to participate in the bankruptcy." (Docket No. 67, pg. 7). The instant case is about specific stock shares that Plaintiff inherited. The instant case entails a specific number of corporate stock shares

-11-

which were specifically accepted by Plaintiff from the inheritance. The stock shares inherited by Plaintiff, which give him standing to participate in the bankruptcy, are not an asset subject to be divided in participations among other heirs in the probate case. "The acceptance of the shares in the debtor company is the basis for the Plaintiff's standing to demand to be part of the bankruptcy reorganization of Debtor in the instant case, in which he undoubtedly has inherited and accepted membership interest with controlling voting rights;" (vii) "[t]hus, since the interest of Plaintiff to participate in the reorganization is not to question or interfere with the management of the bankruptcy, neither the Settlement Agreement nor the Confirmed Plan, but rather participate in those, Debtor's argument of an estoppel is unfounded and does not merit discussion; and (viii) "Plaintiff does not seek herein a declaration by this Court that he is a shareholder of the Debtor, insofar as such titleship is already an undisputable fact that does not need judicial adjudication by this Court. Rather, Plaintiff seeks to enforce control rights over the reorganization of Debtor as warranted by his ownership in Debtor company, and among other rights, to be permitted to take active part [in the] meetings of the reorganization as a member, in the preparation of a Chapter 11 Plan, among other control rights conferred by the Puerto Rico Law of Corporations. No other Court in the Commonwealth of Puerto Rico, other than this bankruptcy court, could have the power to order codefendant Jorge Díaz to act or to comply with the redresses sought in the instant case, which in sum entail to allow Plaintiff to participate in the controlling decisions of the reorganization of Debtor" (Docket No. 67).

### *Issues*

Before considering Defendant's Jorge Díaz's motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must first determine whether it has subject matter jurisdiction to entertain Plaintiff's claims as an alleged equity holder against the Defendants Jorge Díaz and Betteroads.

-12-

**Position of the Parties**

Defendant Jorge Díaz in his *Motion to Dismiss Complaint and Memorandum of Law in Support Thereof* contends that the court lacks subject matter jurisdiction premised upon the following: (i) the Plaintiff fails to state with specificity the particular facts and the claims asserted for this court to find that it has subject matter jurisdiction; (ii) there is no "arising under" jurisdiction" to entertain Plaintiff's claims which are based on state corporate law and probate law and not by a statutory provision of Title 11; (iii) there is no jurisdiction "arising in" this bankruptcy proceeding because the Plaintiff's claims stem from the potential legal rights that Plaintiff could have over the Debtor's shares and stocks which are part of the Decedents' estates and are under the control of their Executor in Probate state court. The probate estates have not been liquidated and the amount of liabilities supersedes any purported interest that Plaintiff could assert. Moreover, Plaintiff "… already asserted almost identical claims against Defendant in the state injunction case" number SJ2015CV00344; (iv) the claims asserted in the Complaint are not "related to" the underlying bankruptcy case because the outcome of these have no conceivable effect on the bankruptcy estate and/or the administration of the bankruptcy estate; and (v) the probate exception is applicable in the instant case, given that the Plaintiff in the Complaint is requesting the Bankruptcy Court to determine the ownership of stocks that form part of two probate estates pertaining to the jurisdiction of the state probate court. In the alternative, the Defendant argues that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) and 19 for failure to join the Probate Executor and the rest of the heirs of the Probate Estates as indispensable parties. (Docket No. 15).

The Plaintiff in his *Opposition to Codefendant's Motion to Dismiss at Dkt. 15 and Memorandum of Law in Support Thereof* argues that (i) "…the allegations in the *Amended*

*Complaint* relate to matters concerning the administration of the estate and the reorganization that is being directed by defendant as the officer in control of the Debtor, and/or concern "related matters" within the meaning of 28 U.S.C. §157, which regardless of the effect upon Plaintiff's rights as a shareholder of Debtor, will affect the way Defendant manages the Debtor in the bankruptcy's reorganization and approval of a Plan without the intervention of Plaintiff"; (ii) Plaintiff is not seeking in the instant case an adjudication that he is a shareholder of the Debtor, as such titleship is an undisputable fact. This is not a probate controversy. Plaintiff seeks to enforce control rights, to be permitted to take active part [in the] meetings of the reorganization as a member, in the preparation of the Chapter 11 plan, among other control rights conferred by the Puerto Rico Law of Corporations; (iii) "[t]his action is premised on the fact that Defendant Jorge Díaz is in sole control of the Reorganization of the Plan of Debtor, and Plaintiff has been arbitrarily precluded from participating in the preparation of the Plan of Reorganization, as he has been disregarded and ignored as a member shareholder," (iv) "[w]hile the instant proceeding will not have a monetary effect on the estate, its outcome if the Court grants Plaintiff's relief for involvement in the bankruptcy's administration and voting for the Plan, could conceivably have an effect on the way the estate is currently being administered arbitrarily by the Defendant, which could even affect the relations with creditors for the better and the effectiveness of a Plan of Reorganization of Debtor company. Hence, the instant case is definitely related to the bankruptcy case because the outcome of this proceeding will certainly have an impact upon the way the Debtor in Possession is being administered and reorganized through the singular commands of Defendant Jorge Díaz, and could even affect the Plan for reorganization in the context of how it will be conceived, designed and voted upon by the Board of Directors for ultimate approval by the Court; (v) the shareholder's "control rights" that Plaintiff seeks to enforce will affect the management of the Debtor are more than related to the bankruptcy because these include the

-14-

rights to hold meetings of Debtor, to oust any inadequate management, and to vote on, or participate in the plan confirmation process by voting for or against the plan, and/or any asset sales of the estate that could affect members' ownership. Under corporate law, Plaintiff as shareholder of Debtor must be allowed to vote to approve any sale of assets from the estate, if any, within the reorganization outside the usual course of business; (vi) "[t]hus, the reliefs requested by Plaintiff in the instant *Amended Complaint* totally relate or arise in the bankruptcy, as they involve acts that need to be performed by both, the defendant as manager of Debtor and the Debtor itself;" (vii) "[m]ember's rights to be granted here are "dependent" upon this Court's ruling and jurisdiction over the bankruptcy, and upon the compliance by the Debtor, thus, such "related matter" associated to the Bankruptcy Debtor falls under 28 U.S.C. §157(c)(1), as a bankruptcy may hear and determine those related matters between a Debtor and its Members under 28 U.S.C. § 157; (viii) "[b]y claiming lack of subject matter jurisdiction and suggesting that this proceeding could be filed in another court, Defendant Jorge Díaz is actually suggesting that this bankruptcy court must be instructed by another state or district court to allow a shareholder to become a part of the reorganization and plan in the bankruptcy; and moreover, instructed to modify an automatic stay if necessary to command Debtor to act in compliance with the Puerto Rico's law of corporations;" (ix) "[t]hus, Plaintiff contends that the control rights he seeks to enforce in this case to participate in the Reorganization and Plan as Member of Debtor company could not be granted nor enforced outside of this court, because the Debtor would need to be a defendant party outside the bankruptcy to be ordered to comply with certain acts, which could be thwarted or even prevented by the automatic stay;" (x) "[i]f taken in any other Court, this proceeding would become moot if a Plan is approved without Plaintiff's involvement as shareholder;" and (xi) "… even if there are claims in the instant case asserted by Plaintiff that are based upon the Puerto Rico Law of Corporations, they are still within the context of the

-15-

reorganization, and thus "related" to the bankruptcy, inasmuch as the reliefs requested include specific acts to be performed by the Debtor Company itself within the reorganization regarding the disclosure of books, management and the Plan and this Court can act pursuant to Sec 105 of the Code to allow a proper reorganization with the participation of its shareholders." (Docket No. 41).

**Applicable Law and Analysis**

Fed. R. Civ. P. 12(b)(1) and Jurisdictional Principles

Pursuant to Fed. R. Civ. P. 12(b)(1), applicable in bankruptcy adversary proceedings through Fed. R. Bankr. P. 7012, a party may request the dismissal of a complaint for "lack of subject matter jurisdiction." Fed. R. Bankr. P. 7012(b)(1). "This rule is a large umbrella, overspreading a variety of different types of challenges to subject matter jurisdiction. Some challenges—those grounded in considerations of ripeness, mootness, sovereign immunity, and the existence of federal question jurisdiction are good examples." Valentin v. Hosp. Bella Vista, 254 F. 3d 358, (1st Cir. 2001) referencing Ernst & Young v. Depositors Econ. Prot. Corp., 45 F. 3d 530, 534 (1st Cir. 1995).

Moreover, " [i]n ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff. In addition, the court may consider whatever evidence has been submitted….." Portland Pipe Line Corp., 164 F. Supp. 3d at 173-74; See also; Gonzalez v. U.S., 284 F. 3d 281, 288 (1st Cir. 2002). In view of the authority referenced above, the Court may consider the numerous exhibits attached to the complaint and motion.'" Riley v. Lexmar Global Inc. (In re Progression, Inc.), 559 B.R. 8, 10-11(Bankr. D. Mass. 2016).

"Lack of subject matter jurisdiction may be raised at any time. Indeed, even if the litigants do not identify a potential problem in that respect, it is the duty of the court—at any level of the proceedings—to address the issue *sua sponte* whenever it is perceived." 2 Moore's Federal Practice - Civil § 12.30 (2021); See also Fed. R. Civ. P. 12(h)(3) applicable in bankruptcy proceedings through Fed. R. Bankr. P. 7012(b); In re Recticel Foam Corp., 859 F. 2d 1000, 1002 (1st Cir. 1988) ("a court has an obligation to inquire *sua sponte* into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting"); Goldsmith v. Massad (In re Fiorillo), 494 B.R. 119, 142 (Bankr. D. Mass. 2013) (bankruptcy courts are "obligated to determine whether and to what extent [they] have jurisdiction to hear and determine all counts of the complaints"); Feliciano v. Dubois, 846 F. Supp. 1033, 1041 (D. Mass. 1994) ("a court always had an obligation to consider, even on its own initiative as well as on motion of an opposing party, whether it has subject matter jurisdiction").

The jurisdiction of the bankruptcy courts is grounded in, and limited by, statute. See Celotex Corp. v. Edwards, 514 U.S. 300, 307, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995). "Subsections 1334(a), (b) and (e) of title 28, United States Code, establish the jurisdiction of the federal district courts over title 11 cases, over civil proceedings that take place under the umbrella of a title 11 case and over property of the title 11 estate, respectively." Alan N. Resnik & Henry J. Sommer, 1 Collier on Bankruptcy, ¶3.01[1] (16th ed. 2021). 28 U.S.C. §1334, provides that the district courts have jurisdiction over two main categories of bankruptcy matters, namely; "cases under title 11," over which the district court has original and exclusive jurisdiction and "proceedings arising under title 11, or arising in or related to cases under title 11," over which the district court has original, but not exclusive jurisdiction. 28 U.S.C. §1334(a) & (b). See Middlesex Power Equip. & Marine v. Town of Tyngsborough, Mass. (In re Middlesex Power Equip. &

Marine, Inc.), 292 F. 3d 61, 66 (1st Cir. 2002); Gupta v. Quincy Med. Ctr., 858 F. 3d 657, 661 (1st Cir. 2017). "'Cases'" under title 11 are to be distinguished from civil proceedings arising under title 11 or civil proceedings related to or arising in title 11 cases. 'Cases' are the subject of section 1334(a), while 'civil proceedings' are covered by section 1334(b). The introductory phrase of section 1334(a), 'Except as provided in subsection (b) of this section', introduces the concept that the jurisdiction of the district courts over title 11 'cases' is original and exclusive, while the jurisdiction over civil proceedings arising under title 11, or arising in title 11 cases, or related to those cases, is original but not exclusive." Alan N. Resnik & Henry J. Sommer, 1 Collier on Bankruptcy, ¶3.01[2] (16th ed. 2021).

28 U.S.C. §157(a) provides that, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."[1] "This broad jurisdictional grant allows the bankruptcy courts to 'deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" Celotex Corp. v. Edwards, 514 U.S. at 308 (citing Pacor, Inc. v. Higgins, 743 F. 2d 984, 994 (3rd Cir. 1984)). The demarcations between these types of proceedings are not always easy to distinguish from each other. See In re Middlesex Power Equip. & Marine, Inc., 292 F. 3d at 68 ("[t]he dividing line is unclear between proceedings that 'arise under' as opposed to 'arise in' and as opposed to 'related to" title 11. The statute itself provides no definitions."). See also; Wood v. Wood (In re Wood), 825 F. 2d 90, 96 (5th Cir. 1987); Tamko Roofing Prods., Inc. v. Ideal Roofing Co., 282 F. 3d 23, 32 (1st Cir. 2002). "Section 157 also divides bankruptcy proceedings into two further categories: "core" and "non-core." Stern v. Marshall, 564 U.S. 462, 473-76, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011). These categories

---

[1] In the United States District Court for the District of Puerto Rico, bankruptcy cases are referred automatically to the bankruptcy court pursuant to the Court's General Order of July 19, 1984. Juan Torruella, Resolution (July 19, 1984).

determine '[t]he manner in which a bankruptcy judge may act on a referred matter." Id. at 473. Proceedings 'arising under title 11, or arising in a case under title 11,' are both considered 'core proceedings' in which the bankruptcy court may enter final orders and judgments. Id. at 474 (citing 28 U.S.C. § 157(b)). Proceedings merely 'related to' a case under title 11 are considered 'non-core' proceedings. Stern, 564 U.S. at 477 (citing Collier on Bankruptcy ¶ 3.02[2], p. 3-26, n.5 (16th ed. 2010) ('The terms 'non-core' and 'related' are synonymous.'). Although whether a bankruptcy proceeding is a core proceeding is analytically separate from whether there is jurisdiction, 'by definition all core proceedings are within the bankruptcy court's jurisdiction.' Continental Nat'l Bank v. Sanchez (In re Toledo), 170 F.3d 1340, 1345 n.6 (11th Cir. 1999) (citing 28 U.S.C. §§ 157(b)(1), 1334(b))." Gupta v. Quincy Med. Ctr., 858 F. 3d. at 662, fn 5; See also, Roy v. Canadian Pac. Ry. Co. (In re Lac-Mégantic Trail Derailment Litig.), 999 F. 3d 72, 79, fn. 4 (1st Cir. 2021).

Bankruptcy proceedings "arising under" title 11 are those in which the Bankruptcy Code itself creates a statutory cause of action. Gupta v. Quincy Med. Ctr., 858 F. 3d at 662 (citing Stoe v. Flaherty, 436 F. 3d 209, 217 (3rd Cir. 2006)(noting that 'arising under' jurisdiction is limited to proceedings where "the Bankruptcy Code creates the cause of action or provides the substantive right invoked"); In re Wood, 825 F. 2d at 96 ("Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11.")). "Courts have held that civil proceedings "arising under title 11" include causes of action to recover fraudulent transfers, avoidance actions brought under section 544(b) of the Bankruptcy Code, actions to recover postpetition transfers under section 549 and actions against general partners under section 723." Alan N. Resnik & Henry J. Sommer, 1 Collier on Bankruptcy, ¶3.01[3][e][i] (16th ed. 2021). Other civil proceedings that arise particularly under title 11 and are classified as administrative matters or contested matters under Fed. R. Bankr. P.

9014 include the following controversies: "…whether to appoint or elect a trustee under chapter 11, motions to obtain financing with priority over existing liens, confirmation of a plan under chapters 9, 11, 12 or 13, sales free and clear of liens, complaints objecting to the discharge of a debtor and the payment of post confirmation fees to the United States trustee in chapter 11 cases." Id. at ¶3.01[3][e][i].

Proceedings "arising in" cases under title 11 are "those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68; see also; Gupta v. Quincy Med. Ctr., 858 F. 3d at 663 (citing Stoe v. Flaherty, 436 F. 3d  at 218 ("[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case."); Continental Nat'l Bank v. Sanchez (In re Toledo), 170 F.3d 1340, 1345 (11th Cir. 1999) (stating that proceedings "arising in" bankruptcy are "matters that could arise only in bankruptcy")). "There is no 'but for' test for arising in jurisdiction; that is, the fact that a matter would not have arisen had there not been a bankruptcy case does not *ipso facto* mean that the proceeding qualifies as an "arising in" proceeding." Id. at ¶3.01[3][e][iv].

"'Arising in' acts as the residual category of civil proceedings, and includes such things as administrative matters, "orders to turn over property of the estate" and "determinations of the validity, extent, or priority of liens." 'Arising in' proceedings might also include contempt matters, motions to appoint an additional committee under section 1102, and motions to appoint or elect trustees or appoint examiners under section 1104. An action to recover a postpetition account 'arises in the bankruptcy case,' as does an action challenging certain activities connected with an auction of estate property, and an action for legal malpractice that arose postpetition, even one that belongs to the debtor and not to the estate." Id. at ¶3.01[3][e][iv].

"This category is also illustrated by such things as allowance and disallowance of claims, orders in respect of obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans and like matters. In none of these instances is there a "cause of action" created by statute, nor could any of the matters illustrated have been the subject of a lawsuit absent the filing of a bankruptcy case." Id. at ¶3.01[3][e][iv].

"By far the largest number of reported cases dealing with bankruptcy jurisdiction over civil proceedings are concerned with whether a particular proceeding is "related to" a title 11 case. These cases are of two kinds. The first concerns whether, at one extreme, although a particular civil proceeding is definitely within bankruptcy jurisdiction, it is "core" or "related"; the second concerns whether, at the other extreme, a civil proceeding is "related" or is not within the bankruptcy jurisdiction granted by section 1334(b) at all." Id. at ¶3.01[3][e][ii]

This court in <u>Martinez Arzuaga v. Quantum, Servicing Corp.</u> (In re Martinez Arzuaga), 2012 Bankr. LEXIS 1443 at *12-13, 2012 WL 1120673 at *5 (Bankr. D.P.R. 2012) analyzed whether a bankruptcy court had jurisdiction to adjudicate and FDCPA claim under the "related to" a title case and its analysis was the following:

"[w]hether the claims are sufficiently "related to" a bankruptcy case is a question of whether they are "sufficiently connected" to the debtor's reorganization. The Third Circuit has established a much-cited standard for determining whether a proceeding is "related." <u>In Pacor, Inc. v. Higgins</u>, 743 F.2d 984 (3rd Cir. 1984), the court described the test as whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." The First Circuit has recognized this standard. See <u>In re G.S.F. Corp.</u>, 938 F.2d 1467, 1475 (1st Cir. 1991). In addition, numerous First Circuit, district and bankruptcy courts have accepted and applied this test. See, e.g., <u>In re Santa Clara County Child Care Consortium</u>, 223 B.R. 40, 45 (B.A.P. 1st Cir. 1998) [*13] (providing a lengthy list of First Circuit district and bankruptcy courts adopting the Pacor test). Simply stated, if the determination of the controversy could have an effect on the bankruptcy estate, the controversy is a "related matter." 28 U.S.C.A. § 157(a).

-21-

See also In re Roman-Perez, 527 B.R. at 852-854; Torres Melendez v. Collazo Connelly & Surillo, LLC (In re Torres Melendez), 2020 Bankr. LEXIS 297, at *4-5 (Bankr. D.P.R. Feb. 3, 2020).

"Hence, an action is 'related to' bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." In Pacor, Inc. v. Higgins, 743 F.2d at 994.

"Civil proceedings encompassed by section 1334(b)'s "related proceedings," that is, those whose outcome could conceivably have an effect on the bankruptcy estate fall into two main categories: (1) those that involve causes of action owned by the debtor that became property of a title 11estate under section 541 (as distinguished from postpetition causes of action, i.e., those that come into existence during the pendency of the bankruptcy case); and (2) those that are suits between third parties that "in the absence of bankruptcy, could have been brought in a district court or a state court." Alan N. Resnik & Henry J. Sommer, 1 Collier on Bankruptcy, ¶3.01[3][e][i] (16th ed. 2021).

Therefore, in the instant adversary proceeding the Plaintiff's claims must "arise under," "arise in," or "relate to" a cause under title 11 to fall within section 1334's jurisdictional scope.

The Plaintiff in his Opposition to *Codefendant's Motion to Dismiss at Dkt. 15 and Memorandum of Law in Support Thereof* contends that this court has "related to" jurisdiction to entertain his claims under 28 U.S.C. §157(c)(1)[2] in this civil proceeding because these are "related matters" associated to the Bankruptcy Debtor and its members. The Plaintiff argues this court has jurisdiction under the "related to" jurisdictional scope under 28 U.S.C. §1334(b) based mainly upon the following: (i) "[w]hile the instant proceeding will not have a monetary effect on the estate, its outcome if the Court grants Plaintiff's relief for involvement in the bankruptcy's administration

---

[2] 28 U.S.C. §157(c)(1) provides: "A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."

and voting for the Plan, could conceivably have an effect on the way the estate is currently being administered arbitrarily by the Defendant, which could even affect the relations with creditors for the better and the effectiveness of a Plan of Reorganization of Debtor company. Hence, the instant case is definitely related to the bankruptcy case because the outcome of this proceeding will certainly have an impact upon the way the Debtor in Possession is being administered and reorganized through the singular commands of Defendant Jorge Díaz, and could even affect the Plan for reorganization in the context of how it will be conceived, designed and voted upon by the Board of Directors for ultimate approval by the Court;" and (ii) "[t]he shareholder's 'control rights' that Plaintiff seeks to enforce through this Court and that will affect the management of the debtor are more than related to the bankruptcy, as they include the rights to hold meetings of Debtor, to see the books of the Debtor, to vote for and select a board of directors of Debtor, to oust any inadequate management, and to vote on, or participate in, certain corporate actions for the chapter 11 reorganization, such as to be allowed to participate in the plan confirmation process by voting for or against the plan, and/or any asset sales of the estate that could affect members' ownership. Under corporate law, Plaintiff as shareholder of Debtor must be allowed to vote to approve any sale of assets from the estate, if any, within the reorganization outside the usual course of business" (Docket No. 41, pgs. 3 & 4).

The court finds the Plaintiff's arguments regarding that this court has jurisdiction under a "related to" civil proceeding pursuant to section 1334(b) are unsubstantiated. Plaintiff's "related to" claim does not fall under the first category that involves causes of action owned by the Debtor. Plaintiff's "related to" claim falls under the second category which are namely lawsuits between third parties that "in the absence of bankruptcy, could have been brought in a district court or a state court." However, the court finds that Plaintiff's claims fail the Pacor test because the claims are all moot because the same are based upon Plaintiff's participation as a shareholder (or his

-23-

"shareholder control rights") in the manner in which the Debtor is being administered and this having an impact on the plan of reorganization, the sale of assets and the plan confirmation and the Debtor's reorganization thereafter. In addition, the potential outcome of this proceeding will not have a monetary effect on the bankruptcy estate nor could it alter positively or negatively the Reorganized Debtor's "rights, liabilities, options, or freedom of action" in any manner that would impact the handling and administration of the bankruptcy estate. The Plaintiff's claims are moot because on April 28, 2021, the Debtor executed the Settlement and Release Agreement which incorporated the Asset Purchase Agreement with Puerto Rico Asphalt, LLC. This Settlement Agreement provided for Plaintiff and his counsels to be notified of the consequences of the approval of the settlement (Case No. 17-04156, Docket Nos. 1122 & 1126). Thereafter, on May 17, 2021, the Court entered the Bankruptcy Rule 9019 Order approving the Settlement Agreement (Case No. 17-04156, Docket No. 1142). On June 9, 2021, during the confirmation hearing, the Court entered the Confirmation Order (Case No. 17-04156, Docket No. 1178) that provides for a discharge of claims pursuant to Article III, Subsection A. (Case No. 17-04156, Docket No. 1137). The confirmation Order provides an injunction in favor of the Reorganized Debtor that enjoins parties from continuing claims asserted in purported claims or interest on the Debtor. Moreover, all equity interest on the Debtor which existed upon filing up to the confirmation were extinguished and ceased to exist (Case No. 17-04156, Docket No. 1137, pg. 26, Class 8: Equity Holders' Interest).

Lastly, the court clarifies that the Plaintiff in his *Response to Betteroads' Motion to Dismiss and in the Alternative a Finding of Mootness, to Concede Dismissal* (Docket No. 67) conditions his arguments to whether this court adjudicates *a priori* that Plaintiff's cause of action against Betteroads has been mooted based on the treatment of extinction of his equity interest by the confirmed Plan, despite the confirmed Amended Plan not being completed or substantially

-24-

consummated. The court finds that this conditioned argument is premature because its basis is predicated on an event that has not occurred, and this would put the Court in the unwarranted position of providing an advisory opinion. The court notes that Plaintiff does not seek an adjudication from this Court that he is a shareholder of the Debtor because said titleship is an undisputable fact. However, Betteroads disagrees with the Plaintiff's allegation as to his titleship (ownership) of the Debtor's shares. The Plaintiff has admitted that he accepted the inheritance under the benefit of inventory. Betteroads argues that no division or distribution has been performed, and thus, the Plaintiff is not the holder of any equity of the debtor prior to confirmation because the equity of the Debtor is part of the probate estate and at this juncture, the Plaintiff cannot assert any ownership claims.

## Conclusion

In view of the foregoing, this court finds that it has no subject matter jurisdiction over Plaintiff's claims against Defendants Jorge Díaz and Betteroads. Therefore, the Defendant Jorge Díaz's *Motion to Dismiss* is hereby granted.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 8th day of November 2021.

Enrique S. Lamoutte
United States Bankruptcy Judge

-25-